## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JACK CATHEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-cv-3528 |
| | § | |
| EQUIFAX INFORMATION | § | With Jury Demand Endorsed |
| SERVICES LLC, EXPERIAN | § | |
| INFORMATION SOLUTIONS, Inc., | § | |
| TRANS UNION LLC | § | |
| NATIONSTAR MORTGAGE LLC, | § | |
| and OCWEN LOAN SERVICING, LLC | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Jack Cathey ("Plaintiff"), by and through counsel, for his Complaint against Defendants, Equifax Information Services LLC**,** Experian Information Solutions, Inc., Trans Union LLC, Nationstar Mortgage LLC, and Ocwen Loan Servicing, LLC, jointly, severally, and in solido, states as follows:

### I.  INTRODUCTION

1.       Three of the Defendants are, consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and two Defendants, Nationstar Mortgage LLC and Ocwen Loan Servicing, LLC, are furnishers of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et*

*seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Nationstar Mortgage LLC and Ocwen Loan Servicing, LLC are also liable for violating the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e).  Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II.  PARTIES

2.      Plaintiff, Jack Cathey, is natural person, residing in Parker County, Texas, and is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c)**,** and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," or "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district

and may be served by delivering a summons to its headquarters, 475 Anton Blvd., Costa Mesa, California 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5.      Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6.      Upon information and belief, Defendant Nationstar Mortgage, LLC or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit

information to consumer reporting agencies.

7.     Upon information and belief, Defendant Ocwen Loan Servicing, which may also hereinafter be referred to as "Ocwen," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409. Ocwen is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

8.     Nationstar Mortgage, LLC and Ocwen Loan Servicing, LLC are servicers as defined by RESPA, 12 U.S.C. v 2605(i)(2).

9.     As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and TransUnion.

### III.  JURISDICTION AND VENUE

10.     Plaintiff respectfully assert that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also assert actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully request that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

11. Venue is proper in  this district, because Defendants transact business in this district, Nationstar's headquarters is located in this district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Northern District of Texas. 28 U.S.C. § 1391.

12. Venue is further proper in this District because Plaintiff resides in this district.

13. Venue is further proper in this District because CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiff's dispute sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Nationstar's resources located at or closely connected to this judicial district. Nationstar managed Plaintiff's mortgage(s) from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

<u>Background Information for Plaintiff's Ocwen and Nationstar Mortgages</u>

14.     In or around September 8, 2004, Plaintiff secured a mortgage for his property at 1701 Firestone Drive #1, Snyder, Texas 79549, which was with Ocwen Loan Servicing, LLC and was assigned a loan number 7110****, hereinafter ("First Ocwen Mortgage").

15.     Plaintiff made timely payments to the First Ocwen Mortgage.

16.     In or around September 22, 2006, Plaintiff secured a mortgage for his property at 2957 Colonels Road, Graford, Texas 76449, which was with Ocwen Loan Servicing, LLC and was assigned a loan number 7013****, hereinafter ("Second Ocwen Mortgage").

17.     Plaintiff made timely payments to the Second Ocwen Loan.

18.     In or around September 22, 2006, Plaintiff secured a second mortgage for his property at 2957 Colonels Road, Graford, Texas 76449, which was with Nationstar Mortgage LLC and was assigned a loan number *****5953, hereinafter ("Nationstar Mortgage")

19.     Plaintiff made timely payments to the Nationstar Mortgage.

20.     In or around October 13, 2016, Plaintiff sold the property at 2957 Colonels Road, Graford, Texas 76449. A payoff of the Second Ocwen Mortgage was made to Defendant Ocwen.

21.     A redacted copy of Plaintiff's Closing Disclosure is attached hereto as Exhibit "A" and is incorporated by reference herein.

22.     In or around October 13, 2016, Plaintiff settled the full mortgage amount with Defendant Nationstar.

23.     Upon information and believe, in or around June 2019, Plaintiff's primary first mortgage, the First Ocwen Mortgage, was purchased by, transferred to, or otherwise acquired by

Defendant Ocwen, who started servicing the loan at that time.

24.     To this day, Plaintiff still lives at 1701 Firestone Drive #1, Snyder, Texas 79549 and continues to make timely mortgage payments to the First Ocwen Mortgage.

<u>Credit Reporting for the First Ocwen Mortgage</u>

25.     Sometime in July of 2020, Plaintiff pulled his credit reports for Equifax, Experian, and Trans Union and noticed they were not accurately reporting his First Ocwen Mortgage.

26.     A redacted copy of Plaintiff 's Tri-merge credit report is attached hereto as Exhibit "B" respectively.

27.     Within the Equifax credit report, Plaintiff noticed that the tradeline for the First Ocwen Mortgage was not reporting.

28.     Within the Experian credit report, Plaintiff noticed that the tradeline for the First Ocwen Mortgage reported as follows: twelve (12) "Late" payments made over the past seven (7) years.

29.     Plaintiff noticed that within the Trans Union credit report tradeline for the First Ocwen Mortgage, it reported as follows: twelve (12) "Late" payments made over the past seven (7) years.

<u>Credit Reporting for the Second Ocwen Loan</u>

30.     Sometime in July of 2020, Plaintiff pulled his Tri-Merge credit report and noticed that Equifax, Experian, and Trans Union were not accurately reporting the Second Ocwen Mortgage. (*See* Exhibit "B").

31.     Within the Equifax credit report, Plaintiff noticed his Second Ocwen Mortgage was not reporting.

32.     Within the Experian credit report, Plaintiff noticed that his Second Ocwen Mortgage reported as follows: fourteen (14) "Late" payments made over the past seven (7) years and "Foreclosure proceeding started".

33.     Plaintiff noticed that within his Trans Union credit report, it reported as follows: fourteen (14) "Late" payments made over the past seven (7) years and "Foreclosure discontinued".

Credit Reporting for the Nationstar Mortgage

34.     Sometime in July of 2020, Plaintiff pulled his Tri-Merge credit report and noticed that Equifax, Experian, and Trans Union were not accurately reporting the Nationstar Mortgage account. (*See* Exhibit "B").

35.     Within the Equifax credit report, Plaintiff noticed his Nationstar Mortgage was not reporting.

36.     Within the Experian credit report, Plaintiff noticed that his Nationstar Mortgage reported as follows: late payments in July 2015; August 2015; October 2015; December 2015; January 2016; February 2016; March 2016; and April 2016, and as a "collections account" that "settled for less than full balance".

37.     Plaintiff noticed that within his Trans Union credit report, it reported as follows: late payments in July 2015; August 2015; October 2015; December 2015; January 2016; February 2016; March 2016; and April 2016, and as a "collections account" that "settled for less than full balance".

Credit Reporting Dispute Letters for the Ocwen Mortgages

38.     On or about September 14, 2020, Plaintiff disputed the reporting of the first Ocwen mortgage and the second Ocwen mortgage accounts with Equifax, Experian, and Trans Union

("CRA Defendants") directly. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning both Ocwen mortgage accounts.

39.     Redacted copies of the Plaintiff's disputes letters to Equifax, Experian, and Trans Union are attached hereto as Exhibits "C," "D," and "E" respectively.

40.     On October 10, 2020, Equifax responded to Plaintiff by adding the Ocwen Mortgage Accounts to his credit report and updated the tradelines to correctly report both Ocwen Mortgage Accounts.

41.     A redacted copy of Equifax's response to Plaintiff is attached hereto as Exhibit "F" and incorporated herein by reference.

42.     Experian did not respond to Plaintiff's September 14, 2020 dispute within 30 days as required by 15 U.S.C. § 1681i(a). Experian's failure to respond to Plaintiff's disputes was a clear violation of the FCRA.

43.     A Certified Return receipt shows that Experian did receive and signed the dispute letter receipt on September 17, 2020.

44.     A copy of the signed Experian Return Receipt is attached hereto as Exhibit "G" and is incorporated by reference herein.

45.     On November 9, 2020, Plaintiff pulled his Tri-Merge credit report again and noticed that no changes were made to either Ocwen Mortgage Accounts in response to his Experian dispute.

46.     A redacted copy of Plaintiff's November 9, 2020 Tri-Merge credit report is attached hereto as Exhibit "H" and is incorporated by reference herein.

47.     Experian's response, if there was one, was not the result of a reasonable investigation

into Plaintiff's dispute and failed to remedy the inaccuracies within both Ocwen tradelines because Experian failed to respond within 30 days and Plaintiff showed that he made timely payments to both Ocwen Mortgage accounts and the property for the Second Ocwen Mortgage was properly sold and paid off, but Experian, in pertinent part, continued to report late payments on both Ocwen Mortgages and report the Second Ocwen Mortgage as foreclosed.

48.     Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's first and second Ocwen mortgage accounts.

49.     Upon the Plaintiff's request to Experian for verification and addition regarding both Ocwen mortgage accounts, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the first and second Ocwen reporting lines.

50.     In the alternative to the allegation that Experian failed to contact Ocwen, it is alleged that Experian did forward some notice of the dispute to Ocwen, and Ocwen failed to conduct a lawful investigation.

51.     Plaintiff did not receive a response from Trans Union to his September 14, 2020 disputes within 30 days as required by 15 U.S.C. 1681i(a). Trans Union's failure to respond to Plaintiff's disputes was a clear violation of the FCRA.

52.     A Certified Return receipt shows that Trans Union did receive and signed the dispute letter receipt on September 17, 2020.

53.     A copy of the signed Trans Union Return Receipt is attached hereto as Exhibit "I" and is incorporated by reference herein.

54.     On November 9, 2020, Plaintiff pulled his Tri-Merge credit report again and noticed that within the Trans Union credit report, the First Ocwen Mortgage was still reporting late payments and the Second Ocwen Mortgage was now reporting as closed. (*See* Exhibit "H").

55.     Trans Union's response, if there ever was one, was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within both Ocwen tradelines because Trans Union failed to respond within 30 days and Plaintiff showed that he made timely payments to the both Ocwen Mortgages and the property for the  Second Ocwen Mortgage was properly sold and paid off, but Trans Union continued reporting late payments on the First Ocwen Mortgage and only reported the Second Ocwen Mortgage as closed.

56.     Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information and continued to publish the inaccurate information regarding Plaintiff's both of Ocwen mortgage accounts.

57.     Upon the Plaintiff's request to Trans Union for verification and addition regarding both Ocwen mortgage accounts, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Ocwen reporting lines.

58.     In the alternative to the allegation that Trans Union failed to contact Ocwen, it is alleged that Trans Union did forward some notice of the dispute to Ocwen, and Ocwen failed to conduct a lawful investigation.

<u>Qualified Written Request for Information with Ocwen</u>

59.     On October 9, 2020, Plaintiff also sent a direct dispute, or a qualified written request ("QWR") under Section 6 of the Real Estate Settlement Procedures Act ("RESPA") to Ocwen to

investigate its reporting of the First and Second Ocwen mortgage and asking Ocwen to provide information and fix any servicing errors.

60.     Plaintiff sufficiently identified himself as a borrower and asked Ocwen to investigate its servicing of the account and reporting of both Ocwen mortgages and asking them to provide information and fix any servicing errors.

61.     Redacted copies of Plaintiff's unsigned QWR letters to Ocwen are attached hereto as Exhibits "J" and "K" are incorporated by reference herein.

62.     On October 28, 2020, pursuant to RESPA, PHH, on behalf of Ocwen, responded to Plaintiff regarding the First Ocwen Mortgage, stating in pertinent part "At this time, we are unable to commence an investigation because the dispute does not provide sufficient information," and included a copy of the payment history for the First Ocwen Mortgage.

63.     A redacted copy of PHH, on behalf of Ocwen,'s response letter to the First Owcen Mortgage dispute is attached hereto as Exhibit "L" and incorporated by reference.

64.     Ocwen did not respond to Plaintiff's second dispute letter regarding the Second Ocwen Mortgage in violation of its duties under RESPA.

65.     Ocwen's response to both Ocwen Mortgage Accounts also failed to provide the information requested and did not fix errors that it knew existed in violation of RESPA.

<u>Credit Reporting Dispute Letters for the Nationstar Mortgage</u>

66.     On or about September 14, 2020, Plaintiff disputed the reporting of the Nationstar mortgage account with Equifax, Experian, and Trans Union ("CRA Defendants") directly. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Nationstar mortgage accounts.

(*See* Exhibits C," "D," and "E")

67.     On October 10, 2020, Equifax responded to Plaintiff. (*See* Exhibit "F").

68.     Equifax responded to Plaintiff, by stating in pertinent part: "We have verified that this item has been reported correctly. This creditor has verified to our company that the current status is being reported correctly," and modified the account by reporting it as "Account paid for Less than Full balance."

69.     On November 9, 2020, Plaintiff pulled his Tri-Merge credit report again and noticed that within the Equifax report, the Nationstar was now reporting as "Collection/Charge off—Paid charge off Real Estate Mortgage. (*See* Exhibit "H").

70.     Equifax's response, or lack thereof, was not reasonable and failed to fix the inaccuracies in Plaintiff's credit file because his dispute was clear, he provided his proof of timely payments, and that the account was paid in full balance, and while Equifax did report the tradeline, in pertinent part, Equifax now reported an inaccurate payment status and placed it in a collections account.

71.     Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information and continued to publish the inaccurate information regarding Plaintiff's Nationstar mortgage account.

72.     Upon the Plaintiff's request to Equifax for verification and addition regarding the Nationstar mortgage account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Nationstar reporting lines.

73.     In the alternative to the allegation that Equifax failed to contact Nationstar, it is

alleged that Equifax did forward some notice of the dispute Nationstar, and Nationstar failed to conduct a lawful investigation.

74.     Experian did not respond to Plaintiff's September 14, 2020 dispute within 30 days as required by 15 U.S.C. § 1681i(a). Experian's failure to respond to Plaintiff's disputes was a clear violation of the FCRA.

75.     A Certified Return receipt shows that Experian did receive and signed the dispute letter receipt on September 17, 2020. (*See* Exhibit "G").

76.     On November 9, 2020, Plaintiff pulled his Tri-Merge credit report again and noticed that no changes were made to the Nationstar account in response to his Experian dispute. (*See* Exhibit "H").

77.     Experian's response, if there ever was one, was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies with the Nationstar tradelines because Experian failed to respond within 30 days and Plaintiff showed that he made timely payments to the Nationstar Account and paid the balance in full to settle the account, but Experian, in pertinent part, continued to report late payments and report the account in collections with an unpaid balance.

78.     Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Nationstar accounts.

79.     Upon the Plaintiff's request to Experian for verification and addition regarding the Nationstar Mortgage account, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any

attempt to substantially or reasonably verify the Nationstar reporting lines.

80.     In the alternative to the allegation that Experian failed to contact Nationstar, it is alleged that Experian did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

81.     Plaintiff did not receive a response from Trans Union to his September 14, 2020 dispute within 30 days as required by 15 U.S.C. 1681i(a). Trans Union's failure to respond to Plaintiff's disputes was a clear violation of the FCRA.

82.     A Certified Return receipt shows that Trans Union did receive and signed the dispute letter receipt on September 17, 2020. (*See* Exhibit "I").

83.     On November 9, 2020, Plaintiff pulled his Tri-Merge credit report again and noticed that within the Trans Union credit report, the Nationstar Payment history was deleted, however the account status now reported as "Closed" and the Payment status reported as "Collection/Charge off—Payment after charge off/collection; paid profit and loss." (*See* Exhibit "H").

84.     Trans Union's response, if there ever was one, was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Nationstar tradelines because Trans Union failed to respond within 30 days and Plaintiff showed that he made timely payments and paid off the full balance to the Nationstar account, but Trans Union, in pertinent part, deleted the payments history and changed the account and payment status, reporting the Nationstar tradelines as collections.

85.     Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information and continued to publish the inaccurate information regarding Plaintiff's Nationstar mortgage accounts.

86.     Upon the Plaintiff's request to Trans Union for verification and addition regarding the Nationstar mortgage accounts, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Nationstar reporting lines.

87.     In the alternative to the allegation that Trans Union failed to contact Nationstar, it is alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

<u>Qualified Written Request for Information with Nationstar</u>

88.     On or around September 14, 2020, Plaintiff sent a qualified written request and notice of error under RESPA to Nationstar.

89.     Plaintiff sufficiently identified himself as a borrower and asked Nationstar to investigate its servicing of the account and reporting of the Nationstar mortgage and asking them to provide information and fix any errors.

90.     A redacted copy of Plaintiff's unsigned RESPA QWR to Nationstar is attached hereto as Exhibit "M" and is incorporated by reference herein.

91.     Nationstar did not respond to Plaintiff's dispute letter in violation of its duties under RESPA.

92.     A Certified Return receipt shows that Nationstar did receive and signed the dispute letter receipt on September 17, 2020. (*See* Exhibit "N").

93.     Nationstar's response failed to provide the information requested and did not fix servicing errors that it knew existed in violation of RESPA.

## V.  GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

94.     The Plaintiff realleges and incorporate all paragraphs above as if fully set out herein.

95.     Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

96.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

97.     Equifax knew or should have known of Plaintiff's loan payoff history and accurate payment history and, yet Equifax continued to prepare a patently false consumer report concerning Plaintiff.

98.     Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

99.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in his ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

100.    Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiff

for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

101.    The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
## (15 U.S.C. §1681i)

102.    The Plaintiff realleges and incorporate all paragraphs above as if fully set out herein.

103.    Equifax violated 15 U.S.C. § 168li on multiple occasions by failing to update inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to the furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

104.    As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in his ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

105.    Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the

Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

106.    The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

107.    The Plaintiff realleges and incorporate all paragraphs above as if fully set out herein.

108.    Experian violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

109.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

110.    Experian knew or should have known of Plaintiff' loan payoff history and accurate payment history and, yet Experian continued to prepare a patently false consumer report concerning Plaintiff.

111.    Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

112.    As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in his ability to finance goods, loss of credit, loss of the

ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

113.    Experian's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

114.    The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT IV – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

115.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

116.    Experian violated 15 U.S.C. § 168li on multiple occasions by failing to update or delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

117.    As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in his ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

118.     Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

119.     The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT V – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

120.     The Plaintiff realleges and incorporate all paragraphs above as if fully set out herein.

121.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

122.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

123.     Trans Union knew or should have known of Plaintiff's loan payoff history and accurate payment history and, yet Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

124.     Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Trans Union readily provided false reports to one or more third parties, thereby

misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

125.    As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in his ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

126.    Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

127.    The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

## COUNT VI – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

128.    The Plaintiff realleges and incorporate all paragraphs above as if fully set out herein.

129.    Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to update or delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

130.    As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in his ability to finance goods, loss of credit, loss of the

ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

131.    Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

132.    The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT VII – OCWEN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

133.    Defendant Ocwen violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

134.    Ocwen further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Ocwen representation within Plaintiff's credit file with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute of the Ocwen representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Ocwen representations to the consumer reporting agencies.

135.     As a result of Ocwen's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in his ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

136.     Ocwen's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## COUNT VIII – OCWEN'S VIOLATION OF RESPA

137.     The Plaintiff realleges and incorporate all paragraphs above as if fully set out herein.

138.     Under RESPA section 2605(e) and the implementing regulations, a servicer must conduct a reasonable investigation of the errors identified in the borrower's notice and make all appropriate corrections to the account.

139.     Ocwen has negligently and/or willfully violated section 2605(e) by failing to conduct a reasonable investigation of the errors brought to its attention by Plaintiff's request, correct the account accordingly, and left the account riddled with errors.

140.     Ocwen further violated § 2605(e) by failing to credit late charges and/or penalties as required under subsection (2)(A).

141.     Ocwen's failure to respond, conduct a reasonable investigation and make the appropriate corrections to Plaintiff's account, as well as credit late fees and/or penalties, has proximately caused Plaintiff's damages.

142.    Defendant Ocwen is therefore liable to Plaintiff for statutory and actual damages as provided in 12 U.S.C. § 2605(f).

143.    Plaintiff is also entitled to recover reasonable attorney's fees and costs expended in this proceeding from Ocwen as provided in 12 U.S.C. § 2605(f).


## COUNT IX – NATIONSTAR'S VIOLATION OF THE FCRA
## (15 U.S.C. §1681s-2(b))


144.    Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff 's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

145.    Nationstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Nationstar representation within Plaintiff's credit file with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute of the Nationstar representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Nationstar representations to the consumer reporting agencies.

146.    As a result of Nationstar's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in his ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

147.     Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## COUNT X – NATIONSTAR'S VIOLATION OF RESPA

148.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

149.     Under RESPA section 2605(e) and the implementing regulations, a servicer must conduct a reasonable investigation of the errors identified in the borrower's notice and make all appropriate corrections to the account.

150.     Nationstar has negligently and/or willfully violated section 2605(e) by failing to conduct a reasonable investigation of the errors brought to its attention by Plaintiff's request, correct the account accordingly, and left the account riddled with errors.

151.     Nationstar further violated § 2605(e) by failing to credit late charges and/or penalties as required under subsection (2)(A).

152.     Nationstar's failure to respond, conduct a reasonable investigation and make the appropriate corrections to Plaintiff's account, as well as credit late fees and/or penalties, has proximately caused Plaintiff's damages.

153.     Defendant Nationstar is therefore liable to Plaintiff for statutory and actual damages as provided in 12 U.S.C. § 2605(f).

154.     Plaintiff is also entitled to recover reasonable attorney's fees and costs expended in this proceeding from Nationstar as provided in 12 U.S.C. § 2605(f).

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

155.    Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

156.    Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

157.    Plaintiff respectfully requests that this Honorable Court award Plaintiff his litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

158.    The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

159.    Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reporting about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

160.    Plaintiff suffered a variety of damages, including economic and non-economic

damages as prayed for herein.

161.    Defendants have negligently and/or willfully violated various provisions of the FCRA and Nationstar and Ocwen negligently and/or willfully violated RESPA are thereby liable unto Plaintiff.

162.    Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, denial and loss in his attempt to finance goods, credit denials, costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff, Jack Cathey, pray that this Honorable Court:

A.    Enter Judgment in favor of Plaintiff and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, Nationstar Mortgage LLC, and Ocwen Loan Servicing, LLC, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the

FCRA, Nationstar's and Ocwen's violations of RESPA, applicable state law, and common law;

B.      Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.      Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D.      Order that the CRA Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC, and Furnisher Defendants, Nationstar Mortgage LLC and Ocwen Loan Servicing, LLC, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

E.      Grant such other and further relief, in law or equity, to which Plaintiff might show they are justly entitled.

Date Filed: <u>December 1, 2020</u>

Respectfully submitted,

<u>/s/ Matthew P. Forsberg</u>
Matthew P. Forsberg
TX State Bar Number 24082581
Matt@FieldsLaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1868 (telephone)
(612) 370-4256 (fax)

By: */s/ Jonathan A. Heeps*
Jonathan A. Heeps
State Bar No. 24074387
LAW OFFICE OF JONATHAN A. HEEPS
Post Office Box 174372
Arlington, Texas 76003
Telephone (682) 738-6415
Fax (844) 738-6416
jaheeps@heepslaw.com


COUNSEL FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

December 1, 2020                    */s/ Matthew P. Forsberg*
Date                               Matthew P. Forsberg